**In re AIR CRASH AT BELLE HARBOR, NEW YORK ON NOVEMBER 12, 2001.**

**Michael Morley, Jr., et al., Plaintiffs,**

**v.**

**American Airlines, Inc., et al., Defendants.**

**Nos. 02 MDL 1448(RWS), 02 Civ. 3143(RWS).**

United States District Court, S.D. New York.

Sept. 4, 2007.

Randal R. Craft, Jr., Alan D. Reitzfeld, David J. Harrington, Holland & Knight, New York, NY, Desmond T. Barry, Jr., Christopher R. Christensen, Condon & Forsyth LLP, New York, NY, for American Airlines, Inc.

Thad T. Dameris, Bruce D. Oakley, Trevor R. Jefferies, Hogan & Hartson LLP, Houston, TX, Cynthia D. Sleet, George F. Hritz, Hogan & Hartson LLP, New York, NY, David J. Weiner, Hogan & Hartson LLP, Washington, DC, for Airbus Industrie G.I.E.

## OPINION

SWEET, District Judge.

Defendants American Airlines, Inc. ("AAL") and Airbus Industrie G.I.E. ("Air-

bus") have moved for an order under Fed. R.Civ.P. 56 granting summary judgment to the defendants and dismissing with prejudice all claims by plaintiffs Michael Morley, Jr. ("Morley") and Michael Morley, Sr. ("Morley, Sr."), (collectively, "Plaintiffs") in this action. For the reasons stated below, the motion will be granted.

### Facts

This case arises out of the tragic crash of an Airbus aircraft, operated as AAL Flight 587, on November 12, 2001 in Belle Harbor, New York. All 260 persons on board the aircraft died, five residents of Belle Harbor were killed, additional residents suffered injuries, and personal property was damaged.

According to the parties' Local Civil Rule 56.1 Statements of Material Facts, at the time of the crash, Morley (then three years old) was at his home in Belle Harbor with his grandmother, Eleanor G. Dutcher ("Dutcher"). They heard a loud explosion which occurred contemporaneously with the house catching fire. Fearing for their safety, Dutcher and Morley fled to the street, where they watched as the house burned down. Morley, Sr. was not at the house at the time of the crash.

Plaintiffs allege that as a result of the crash, Morley has had to undergo fourteen months of psychotherapy focused on relieving post-traumatic nightmares and fears related to the fire. This action was brought on behalf of Morley by Morley, Sr., and by Morley, Sr. individually, and seeks to recover damages for personal injuries to Morley, and damages for the loss to Morley, Sr. of Morley's services, companionship, and comfort due to those injuries.[1] The Complaint alleges no physical injuries to Dutcher, Morley, or Morley, Sr.

### Summary Judgment Standard

In deciding a motion for summary judgment, a court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000).

The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the non-moving party's case, Celotex, 477 U.S. at 325, 106 S.Ct. 2548. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), as to every element "essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. 2548.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1187 (2d Cir.1987); see also Eastway Constr. Corp. v. New York, 762 F.2d 243, 249 (2d Cir.1985). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If there is not, summary judgment

---

1. Dutcher brought a separate action against     defendants.

is proper. *See id.* at 249–50, 106 S.Ct. 2505.

### Theories of Recovery

The Court has already held that New York compensatory damages law applies to the claims of plaintiffs who were on the ground. *See In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,* No. MDL 1488NYMDS1488NY-ST-ANN0005ES(RWS), 2006 WL 1288298, at *5 (S.D.N.Y. May 9, 2006).

Under New York law, there are two generally accepted methods of proving a claim of negligent infliction of emotional distress: the 'bystander' and the 'direct duty' theories. *See Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir.2000); *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001 (Lawler v. American Airlines, Inc.),* 450 F.Supp.2d 432, 434 (S.D.N.Y.2006).

■ The elements of these claims are well-established. Under the 'bystander' theory, a plaintiff must demonstrate both that "(1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996) (citing *Bovsun v. Sanperi,* 61 N.Y.2d 219, 230–31, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984)). Plaintiffs have conceded that they do not have a claim under the 'bystander' theory.

■ To establish a claim for 'direct duty' liability, a plaintiff must show that "she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Id.* (citing *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 504, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (1983) and *Green v. Leibowitz,* 118 A.D.2d 756, 500 N.Y.S.2d 146, 148 (N.Y.App.Div.1986)). "The duty in such

cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Id.* (citing *Johnson v. Jamaica Hosp.,* 62 N.Y.2d 523, 526–27, 478 N.Y.S.2d 838, 467 N.E.2d 502 (1984)).

■ New York law also recognizes a cause of action where there exists "an especial likelihood of genuine and serious mental distress, arising from ... special circumstances, which serves as a guarantee that the claim is not spurious." *Baker,* 239 F.3d at 421 (citing *Johnson v. State,* 37 N.Y.2d 378, 372 N.Y.S.2d 638, 642, 334 N.E.2d 590 (1975)).

Defendants contend that this 'guarantee of genuineness' theory of recovery is effectively an alternative manifestation of the 'direct duty' theory. The Court agrees. *Johnson* involved a false death notification sent to plaintiffs. *See* 37 N.Y.2d at 379, 372 N.Y.S.2d 638, 334 N.E.2d 590. "Key to liability," the *Johnson* court stated, "is the hospital's duty ... to advise the proper next of kin of the death of a patient." *Id.*

In *Schulman v. Prudential Ins. Co. of Am.,* 226 A.D.2d 164, 640 N.Y.S.2d 112 (N.Y.App.Div.1996), the court found that the recipient of an erroneous diagnosis of Human Immunodeficiency Virus ("HIV") positive status stated a claim under the 'guarantee of genuineness' theory of negligent infliction of emotional distress, but only after finding that defendants who administered the test owed a duty of care to the plaintiff. *See* 226 A.D.2d at 164, 640 N.Y.S.2d 112.

Relying on *Schulman,* the court in *Fosby v. Albany Mem. Hosp.,* 252 A.D.2d 606, 675 N.Y.S.2d 231 (N.Y.App.Div.1998), found that a plaintiff who had been stuck with a needle she legitimately feared was infected with HIV could survive summary judgment. *See* 252 A.D.2d at 608, 675 N.Y.S.2d 231. Defendant hospital's duty

of care to its patient, while not explicitly noted by the court, was implicit in the *Fosby* court's ruling, especially so in light of its citation of only *Johnson* and *Schulman* to reach its conclusion. *See id.*

Finally, in *Broadnax v. Gonzalez*, 2 N.Y.3d 148, 777 N.Y.S.2d 416, 809 N.E.2d 645 (2004), the Court of Appeals held that even in the absence of direct physical injury to the mother, she can recover for negligent infliction of emotional distress for a doctor's malpractice resulting in miscarriage or stillbirth. *See* 2 N.Y.3d at 155, 777 N.Y.S.2d 416, 809 N.E.2d 645. To reach this result, however, the court overruled its prior decision in *Tebbutt v. Virostek*, 65 N.Y.2d 931, 493 N.Y.S.2d 1010, 483 N.E.2d 1142 (1985), to explicitly find that an obstetrician owes a duty of care to not just the fetus, but also the mother. *See id.*

Finding no case supporting plaintiffs' theory that they can recover based on a 'guarantee of genuineness' in the absence of a direct duty, the Court concludes that recovery under this theory necessitates a showing that defendants owed plaintiffs such a duty.

### Defendants Did Not Owe Plaintiffs a Direct Duty

Plaintiffs have cited *In re: September 11 Litigation*, 280 F.Supp.2d 279 (S.D.N.Y. 2003), for the proposition that Defendants violated a direct duty owed them. In the *September 11* case, the tragic facts of which are all too familiar, Judge Hellerstein held that the airline and security screening company defendants owed a duty to those plaintiffs who were injured on the ground. *See* 280 F.Supp.2d at 295. What the case did not address is whether a non-passenger who is physically unharmed is owed a duty sufficient to establish a claim of negligent infliction of emotional distress.

Two cases arising out of the crash of Avianca Flight 52 on January 25, 1990 did decide this issue. In *Tissenbaum v. Aerovias Nacionales de Colombia, S.A. (In re Air Crash Disaster at Cove Neck)*, 885 F.Supp. 434 (E.D.N.Y.1995), Chief Judge Piatt declined "to extend Avianca's direct duty to all the non-passengers its planes fly over on a daily basis" and held that the airline's duty was limited to those non-passengers who had suffered physical injury. 885 F.Supp. at 440.

In *Hassanein v. Avianca Airlines*, 872 F.Supp. 1183 (E.D.N.Y.1995), plaintiff had been home watching television when the plane crashed 50 to 100 yards away. She witnessed the carnage of the crash site while assisting rescuers and actually had to be rescued herself by a passing firefighter when she found herself stranded in "pools of fuel." *Id.* at 1185. Plaintiff also allowed the police to use her home as an emergency response center in the immediate aftermath of the crash. *See id.* Chief Judge Piatt found that plaintiff could not establish a claim for negligent infliction of emotional distress—despite her active participation in the rescue effort—"because plaintiff sustained no physical injuries," and thus, "no special duty can attach to her efforts." *Id.* at 1188.[2]

That Judge Hellerstein cited both *Tissenbaum* and *Hassanein* with approval in the *September 11* case further supports the notion that he did not intend to extend air carriers' duties to even those non-passengers who suffered no physical injuries. *See* 280 F.Supp.2d at 294. To do so would be to expose airlines to "virtually limitless tort liability and . . . create untold economic and social burdens." *Tissenbaum*, 885

---

**2.** Plaintiff's claim based on a knee injury three months after the accident sustained when she fell down steps allegedly weakened by the crash were not dismissed. *See id.* at 1188–91.

F.Supp. at 440 (citations and internal quotation marks omitted).

■ In the absence of a direct duty owed to him, the claim of Morley for negligent infliction of emotional distress must be dismissed. *See Mortise*, 102 F.3d at 696.

■ Michael Morley, Sr.'s claims for loss of companionship, comfort, and services of his son must likewise be dismissed. New York does not allow recovery by a parent for the loss of consortium of a child in a personal injury case. *See Gilbert v. Stanton Brewery*, 295 N.Y. 270, 273, 67 N.E.2d 155 (1946); *Devito v. Opatich*, 215 A.D.2d 714, 715, 627 N.Y.S.2d 441 (N.Y.App.Div.1995). The father's claims also fail because they are derivative of Morley's underlying claim, which lacks a basis in law. *See Milam v. Herrlin*, 819 F.Supp. 295, 306–07 (S.D.N.Y.1993).

*Conclusion*

Finding no material facts in dispute and for the reasons stated above, Defendants' motion for summary judgment is granted and Plaintiffs' action will be dismissed with prejudice.

Submit judgment on notice.

It is so ordered.